

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00309-CV

**CITY OF EAGLE PASS**,
Appellant/Cross-Appellee

v.

Irma Leticia **SALAZAR**,
Appellee/Cross-Appellant

From the 365th Judicial District Court, Maverick County, Texas
Trial Court No. 12-04-27357-MCVJA
Honorable Amado J. Abascal, III, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Marialyn Barnard, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed:  January 14, 2015

AFFIRMED

The City of Eagle Pass ("the City") appeals the trial court's summary judgment awarding

Irma Leticia Salazar's damages based on the City's breach of the parties' mediated settlement

agreement ("the MSA").  The City contends the trial court erred in interpreting the MSA and,

therefore, erred in granting summary judgment.  Salazar filed a cross appeal requesting this court

to extend a deadline contained in the trial court's judgment.  We affirm the trial court's judgment.

**BACKGROUND**

Salazar sued the City for injuries sustained in an automobile accident. Both Salazar's treating physician, Dr. Gerardo Zavala, and an independent medical examiner, Dr. Karl Swann, recommended surgical intervention as a reasonable treatment option for Salazar's back injuries. Dr. Zavala recommended a specific procedure, while Dr. Swann generally recommended surgical intervention without reference to a specific procedure. After a second mediation, the parties settled and signed the MSA.

Under the MSA, the City agreed to pay Salazar a total of $200,000 as follows: (1) $125,000 to be paid by the City within twenty-one days of the drafting instructions; and (2) $75,000 to be paid by the City if Salazar underwent surgery within one year. This second payment was to be made by the City within twenty-one days after Salazar provided the City with proof that she underwent surgery.

Two weeks after the MSA was signed, the City presented Salazar with a "Settlement Agreement and Release" that added the following stipulation to the payment of the $75,000:

> $75,000 made payable to Irma Leticia Salazar and attorney Ray Perez. This amount shall only be paid after the plaintiff submits proof to the Defendant in the form of medical records showing that within one year commencing on September 20, 2013, the Plaintiff underwent the surgical procedure recommended by Dr. Gerardo Zavala in his letter dated November 28, 2011, a copy of which is attached as "Exhibit A" and incorporated herein by reference. Payment shall be made within 15 days after the Defendant is notified of the surgical procedure.

Salazar refused to sign the new agreement because the MSA only required Salazar to undergo surgery while the new agreement required Salazar to undergo the specific procedure recommended by Dr. Zavala. By this time, Salazar had decided not to undergo the treatment recommended by Dr. Zavala, but to undergo a different back surgery recommended by another doctor. When the City refused to make the payments required under the terms of the MSA, Salazar sued the City for breach of contract and moved for summary judgment on the breach of contract claim. The trial

court granted the motion in part[1] and ordered the City to pay Salazar the $75,000 if she "has back surgery within one year of the date of Judgment." This appeal ensued.

## STANDARD OF REVIEW

"This court reviews a trial court's summary judgment *de novo*." *Seabright Ins. Co. v. Lopez*, 427 S.W.3d 442, 446 (Tex. App.—San Antonio 2014, pet. filed) (citing *Valance Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). Summary judgment is appropriate when there is no genuine issue of a material fact and judgment should be granted in favor of the movant as a matter of law. TEX. R. CIV. P. 166a(c); *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). In reviewing a summary judgment, this court applies the following standards: (1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be drawn in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *Lopez*, 427 S.W.3d at 447–48.

## THE MSA IS UNAMBIGUOUS

The City contends that the MSA is unambiguous and the term "surgery" necessarily refers to the surgery recommended by Dr. Zavala. Salazar counters that the MSA broadly uses the term surgery without reference to the specific surgery recommended by Dr. Zavala. Salazar asserts the MSA is unambiguous as written; therefore, parol evidence is not admissible, and the City cannot rely on any evidence outside the four corners of the MSA.

---

[1] The trial court denied the part of the motion requesting attorney's fees.

A mediated settlement agreement is "enforceable in the same manner as any other contract." TEX. CIV. PRAC. & REM. CODE ANN. § 154.071(a) (West 2013); *Castano v. San Felipe Agricultural Mfg., & Irr. Co.*, 147 S.W.3d 444, 448 (Tex. App.—San Antonio 2004, no pet.). "Whether a contract is unambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *National Union Fire Ins. Co. of Pittsburgh, PA v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). If a contract is considered ambiguous then a court may consider the parties' interpretations and admit extraneous evidence to determine the true meaning of the contract. *Id.* However, if a contract is worded so that it can be given a certain or definite interpretation, then it is not ambiguous, and the court will construe the contract to ascertain and give effect to the intentions the parties have objectively manifested in the written instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Sharifi v. Steen Automotive, LLC*, 370 S.W.3d 126, 141 (Tex. App.—Dallas 2012, no pet.). "Where the written contract is clear and certain, the instrument will be deemed to express the intention of the parties and will be enforced as written, no matter what their actual intentions may have been." *EOG Resources, Inc. v. Hanson Prod. Co.*, 94 S.W.3d 697, 701 (Tex. App.—San Antonio 2002, no pet.).

After reviewing the MSA in light of the circumstances presented, we hold that the MSA is unambiguous and requires the City to pay Salazar the $75,000 upon proof that she timely underwent back surgery. Although the City contends that the surgery contemplated was the specific surgical procedure recommended by Dr. Zavala, "[u]nless the agreement shows that the parties used a term in a technical or different sense, we give the terms their plain, ordinary, and generally accepted meaning." *Sharifi*, 370 S.W.3d at 141. There is no reference in the MSA to a specific surgical procedure. The MSA only states that Salazar is to provide "proof of surgery" within one year. The parties had the opportunity to negotiate any and all additional terms the

parties desired in reaching a full and final agreement. If the City intended to condition the $75,000 payment on proof that Salazar underwent the specific procedure recommended by Dr. Zavala, then the City should have ensured that more specific language was included in the MSA. Courts may "neither rewrite the parties' contract nor add to its language;" therefore, we must enforce the MSA as written. *Lennar Corp. v. Markel American Ins. Co.*, 413 S.W.3d 750, 759 (Tex. 2013) (Boyd, J., concurring).

### LATENT AMBIGUITY

The City also argues that the MSA contains a latent ambiguity that was created after the conclusion of mediation when Salazar pursued a different surgical procedure by a different doctor. Salazar contends the relevant portion of the MSA is susceptible to only one interpretation which is that the City promised to pay Salazar $75,000 if she had surgery within one year and provided proof of that surgery.

"A latent ambiguity arises when a contract which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter." *National Union*, 907 S.W.2d at 520. If a latent ambiguity arises, parol evidence is admissible to ascertain the true intent of the parties as expressed in the agreement. *Id.* However, "[t]he ambiguity must become evident when the contract is read in context of the surrounding circumstances, not after parol evidence of intent is admitted to create an ambiguity." *Id.* at 521. An example of a latent ambiguity is a contract that calls for goods to be delivered to "the green house on Pecan Street," and there are two green houses on that street. *Id.* at 520 n.4.

Here, the MSA is unambiguous on its face. The MSA unequivocally requires the City to pay Salazar $75,000 within twenty-one days of receiving proof that Salazar underwent surgery within one year. In arguing that the MSA contains a latent ambiguity, the City relies on the fact that the procedure recommended by Dr. Zavala was the procedure contemplated during mediation.

However, as previously noted, parol evidence of intent is not admissible for the purpose of creating an ambiguity. *Id.* at 520-21. Thus, the City cannot rely on parol evidence regarding the parties' mediation discussions to create an ambiguity. In this case, the MSA calls for payment to be made upon proof that Salazar timely underwent surgery, and no ambiguity arises from the application of the contractual requirement for payment upon the submission of the requisite proof. Therefore, the MSA does not contain a latent ambiguity, and the trial court properly rendered summary judgment for Salazar.

## CROSS APPEAL

In its final judgment, the trial court ordered the City to pay Salazar the $75,000 if Salazar "has back surgery within one year of the date of Judgment." In her cross-appeal, Salazar requests that this court extend the deadline for the surgery to "one year from the ultimate appellate resolution of this case."

In order for this court to review an issue on appeal, the record must show that "a complaint was made to the trial court by a timely request, objection or motion," and the trial court ruled on the request, objection, or motion. TEX. R. APP. P. 33.1(a). If possible, this requirement is heightened in an appeal from a summary judgment where the "issues an appellate court may review are those the movant actually presented to the trial court." *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 783 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

In this case, Salazar did not address the deadline in her motion for summary judgment, nor did she file a motion for new trial or a motion to modify raising her concern about the deadline stated in the trial court's judgment. Salazar's request is similar to a party complaining for the first time on appeal about the attorney's fees award in the trial court's judgment. Such complaints, which are similarly directed at the wording in the trial court's judgment, must first be brought to the trial court's attention and may not be raised for the first time on appeal. *See Marcus v. Smith*,

313 S.W.3d 408, 416-17 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (holding complaint about award of attorney's fees in judgment must be raised by timely objection in trial court); *Lochinvar Corp. v. Meyers*, 930 S.W.2d 182, 190 (Tex. App.—Dallas 1996, no pet.) (holding complaint about trial court's failure to award attorney's fees must be brought to trial court's attention and cannot be raised for first time on appeal). Because Salazar raises the issue about the deadline stated in the trial court's judgment for the first time on appeal, the issue is overruled.

## CONCLUSION

Because the MSA is unambiguous on its face, the trial court did not err in granting summary judgment. The trial court's judgment is affirmed.

Sandee Bryan Marion, Chief Justice